SCANNED

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FEB 0 5 2021

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　　　　Plaintiff, | ) CASE NO. 19-CV-240<br>)<br>) JUDGE KENNETH M. KARAS |
| vs. | ) |
| RONALD MILLER<br>　　　　　　Defendant. | ) |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C.
§ 3582(c)(1)(A)(i) FOR IMMEDIATE COMPASSIONATE RELEASE
DUE TO COVID-19 CIRCUMSTANCES

Comes now, Petitioner, Ronald Miller, Pro se, respectfully moves this Court for an order reducing his sentence to time served based on the extraordinary and compelling circumstances that have presented through the COVID-19 pandemic and the unique health risks to Mr. Miller, 18 § 3582(c)(1)(A)(i).   Mr. Miller suffers from four of the primary underlying conditions that exacerbate COVID-19. He also has characteristics that place him in a higher risk category for serious infection.   Mr. Miller has already sought compassionate release through the administrative channels provided by the Bureau of Prisons.  Mr. Miller submitted his request for compassionate release on November 10, 2020.  He received a denial from the Warden on December 11, 2020, and he should now be released.  See Ex. A & B.

## MEMORANDUM IN SUPPORT

### I.   Introduction

Mr. Miller is currently serving an 120-month sentence at FCI Williamsburg with a release date of October 17, 2027.  Unfortunately, the BOP has reported 8 positive cases from correctional officers and 120 positive cases of coronavirus from inmates at FCI Williamsburg at the time of this filing.  Before reaching FCI Williamsburg Mr. Miller was subjected to the outrageously bad health conditions while housed at the Grady County Jail in Oklahoma.  None of the Staff members wore masks.  Mr. Miller was placed in a holding pen with at lease 50-60 other inmates wearing no masks, then was placed in a 30 man room with no working toilet or shower and no cleaning supplies.  None of the inmates wore masks. Because of this, inmates are at an increased risk of exposure and infection because of the nature of incarceration, which necessarily requires close quarters and limited movement.[1]   Infact, Dr. Chris Beyrer, a professor of epidemiology at John Hopkins School of Medicine determined that prison environments greatly increase the risk of spreading the coronavirus infection.

### II.  Mr. Miller Has Multiple Health Conditions That Put Him At A Serious Risk Of Severe Illness If He Contracts COVID-19.

The Center for Disease Control (CDC) have identified seven underlying health conditions that greatly increase the likelihood of severe illness if the person contracts coronavirus.[2]   Mr. Miller has four of those conditions-over

---

1. See, e.g., Dreier, Hannah, 'A Recipe for Disaster': American prison factories becoming incubators for coronavirus, Washington Post (Apr. 21, 2020 (available online at https://www.washingtonpost.com/national/a-recipe-for-disaster-american-prison-factories-becoming-incubators-for-coronavirus/2020/04/21/071062d2-83f3-11ea-ae26-989cfce1c7c-story.html); https://famm.org/covidresponse/(last visited May 11, 2010).
2. Peopole Who Are at Risk for Severe Illness, CDC 9https://www.cdc.gov/corona-virus/2019-ncov/need-extra-precautions/people-at-higher-risk.html) (last visited May 11, 2020).

half. Medical records from the BOP reflect that Mr. Miller has been diagnosed and is in treatment for; (1) Type 2 Diabetes Mellitus, which causes him to take Insulin as needed twice a day (365 days). Mr. Miller has had problems healing properly (cuts and bruises) prior to his diagnosis of diabetes. His diet has been very poor because the BOP doesn't have a proper health program, especially for diabetics. The national menu consists mostly of starchy foods (rice, bread, noodle, etc.), none of which are healthy for Mr. Miller or anyone else with diabetes. All of these foods are a danger to his sugar level going up; (2) High Blood Pressure (Hypertension, which he takes Hydrochlorothiazide 25 MG once a day (365 day) and Metoprolol Tartcate 25 MG Tab 3 times a day (365 days); (3) Epilepsy/Seizure Disorder, which he takes Levetiraretam 750 MG 2 times a day (365 days); (4) Graves Disease (Disorder of Thyroid), which he takes Methimazole 5 MG Tab once a day (365 days). See Ex. C, Selected Medical Records, attached.[3] The CDC reports that diabetes, asthma, lung disease, and obesity are at a higher risk of becoming severely ill if infected with COVID-19. Although Thyroid Disease is not mentioned by the CDC this disease causes extreme weight loss and gain, heart rate to speed up to unsafe levels (between 150-185 BPS) while resting, mood swings, including axiety attacks which causes shortness of breath.

Further, all of these diseases, including Graves Disease, also increase the risk of a more serious illness if he were to be infected with COVID-19. Mr. Miller has hypertension, or high blood pressure, as well as diabetes. Hypertension has shown a fatality rate of over 6% for those who contract COVID-19.[5]

---

3. Because Mr. Miller's BOP medical records are hundreds of pages, he has provided a few pages that highlight his diagnoses and recent treatment.
4. What People with High Blood Pressure Need to Know About COVID-19, Am. Heart Ass'n (Mar. 31, 2020), http://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19.
5. Todd Neal, New Wuhan Data Confirm high Hypertension Rate in COVID-19 Deaths, TCTMD (Apr. 10, 2020), http://tctmd.com/news/new-wuhan-data-confirm-high-hypertension-rate-covid-19-deaths.

Fully half of fatalities in Wuhan during a recent study were people who had high blood pressure.[6] These conditions push Mr. Miller's risk of harm even higher.

## III. Exceptional Circumstances: COVID-19 Pandemic

As of May 11, 2020, the new strain of coronavirus (COVID-19) has infected over 4.1 million people, leading to at least 283,788 deaths worldwide.[7] As of this filing, the United States are now at 376,283 deaths and is now at a count of 22,819,030 positive tested cases. Governor DeWine declared a State of Emergency on March, 2020,[8] and on March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[9] Governor DeWine has Subsequently issued "stay at home" orders to prevent further spread of the virus extending until the end of May.[10] As of May 11, 2020, there are 23,400 confirmed cases of the virus in Ohio, 4,413 people have been hospitalized, and 1,236 have died.[11] The COVID-19 pandemic is "clearly out of the ordinary, uncommon, or rare."

The CDC has issued guidance that all individuals take immediate preventive actions to minimize the spread of COVID-19, including avoiding crowded areas and staying home as much as possible.[12] The conditions in jails do not allow for a vulnerable inmate to take the recommended preventive actions and create an ideal environment for the transmission of contagious disease.[13]

7. Corona Map: Tracking the Spread of the Outbreak, The New York Times (Apr. 21, 2020), https://nyti.ms/2U4mud (updating regularly).
8. Governor DeWine Signs Emergency Order Regarding Coronavirus Response, Ohio.gov (Mar. 9, 2020), https://ema.ohio.gov/Documents/pdfs/DeWine Signs Emergency Order Regarding Coronavirus Response 0309.pdf.
9. WHO Characterizes COVID-19 as a Pandemic, World Health Organization (Mar. 11, 2020), https://bit.ly/2W8dwpS.
10.   https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-Safe-Ohio.pdf(last visited May 6, 2020).
11.   COVID-19, Ohio.gov,  https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home (last visited May 11, 2020).
12. Social Distancing, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited May 11, 2020).
13. Joseph A. Bick Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases 1047 (2007). https://bit.ly/2W9V6oS.

Inmates cycle in and out of jails from all over, and people who work in the facilities leave and return daily, without effective screening.

According to public health experts, incarcerated individials "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[14]   Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[15]   In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[16] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[17]   Courts across Iran have granted 100,000 inmates, or over half of Iran's total prison population, furlough as part of the measures to contain coronavirus across the country.[18]   And most worryingly, the largest outbreak of COVID-19 currently belongs to an Ohio Prison, the Marion Correctional Institution.[19]   The New York Times has reported that even though four of the ten largest-known sources of infection in the country are jails or prisons, "those numbers are most likely a vast undercount,

14. Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States, (March 2, 2020), https://bit.ly/2W9V6oS.
15. Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge (Mar. 7, 2020), https://bit.ly/2TNcNZY.
16. Rhea Mahbubani, Chinese Jails Have Become Hotbeds of Coronavirus as More than 500 Cases Have Erupted, Prompting the Ouster of Several Officials, Business Insider (Feb. 21, 20200, https://bit.ly/2vSzSRT.
17. Jennifer Hansler and Kylie Atwood, Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak, CNN (Mar. 10, 2020), https://cnn.it/2W4OpV7.
18. Parisa Hafezi, Iran Extends Prison Furloughs as Coronavirus Death Toll Rises,Reuters (Mar. 29, 2020, 10:43 AM), https://www.reuters.com/articl/us-health-coronavirus-iran/iran-extends-prison-furloughs-as-coronavirus-death-toll-rises-idUSKBN21G0DV.

because [agencies like] the Federal Bureau of Prisons[] are not testing everyone who falls ill."[20]

Given these circumstances and high risk of infection in jails and prisons, both circuit and district courts have released defendants from pretrial detention, due to COVID-19.  See Xochihua-James v. Barr, No. 18-71460 (9th Cir. Mar. 23, 2020)(unpublished)(sua sponte releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); United States v. Meekins, Case No. 1:18-cr-222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020) (post-plea, pre-sentence release order releasing defendant with three pending assault charges due to extraordinary danger COVID-19 poses to folks in detention); United States v. Davis, No. 1:20-CR-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020)(releasing defendant due to the "urgent priority" of decarcerating, to protect both the defendant and the community, and to preserve Sixth Amendment rights in this perilous time); United States v. Bolston, Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020)(releasing defendant in part because "the danger inherent in his continued incarceration at the R.A. Deyton Detention Facility...during the COVID-19 outbreak justif[y] his immediate release from custody"); United States v. Hector, Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19 to folks in prison); United States v. Kennedy, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020)(post-plea presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is necessary for Defendant to prepare his pre-sentence defense"); United States

---

19. Cases Surge in an Ohio Prison, Making it a Top U.S. Hot Spot, N.Y. Times (Apr. 20, 2020). https://nytimes.com/2020/04/20/us/coronavirus-live-news.html.
20. Id.

v. Mclean, No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ("The Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community had not changed - with one exception. That one exception - COVID-19 - however, not only rebuts the statutory presumption of dangerousness, see 18 U.S.C. § 3142(e), but tilts the balance in favor of release."); United States v. Jaffee, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is...convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); United States v. Harris, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on...strict conditions."); United States v. Stephens, 2020 WL 1295155, _ F. Supp. 3d _ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic").

Given these circumstances, Mr. Miller's concern for his health and safety is real and significant. A sentence reduction is justified and should be granted by this Court. Mr. Miller requests this Court grant a reduction under 18 U.S.C. § 3582(c)(1)(A).

## IV. Legal Standards for Seeking Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)

Prior to 2018, a district court could only receive a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), known as a "compassionate release," upon a motion from the Warden of the prison where the defendant was being held. The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow district

courts to modify sentences of imprisonment upon motion by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 603(b), 132 Stat. 5 194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)).

Section 3582(c)(!)(A)(i) authorizes the modification of a sentence of imprisonment if "extraordinary and compelling reasons warrant such reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," as set out in United States Sentencing Guideline § 1B1.13. This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[.]" Pursuant to the requirement of 28 U.S.C. § 994(t), as authorized by 28 U.S.C. § 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria for a reduction in sentencing, which, as set forth in U.S.S.G. § 1B1.13 includes, in relevant part:

(1)(A)  extraordinary and compelling reasons warrant the reduction;

(2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)  the reduction is consistent with this policy statement.

Further, the application note, 1B1.13, Application Note 1(A) provided insight into what constitutes "extraordinary and compelling reasons," which include the defendant's medical condition, and further detailed as:

(ii)  The defendant is:

(I)   Suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially dimishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Following the passage of the First Step Act of 2018, a number of other federal district courts have granted sentence reductions under § 3582(c)(1)(A).   See United States v. Beck, Case No. 1:13-CR-186, 2019 WL 2716505 (M.D.N.C., June 28, 2017); United States v. Johns, Case No. 91-CR-392, 2019 WL 2646663 (D. Ariz., June 27, 2019); United States v. Cantu-Rivera, Case No. 4:89-CR-204, Dkt. 492 (S.D.Tx., June 24, 2019) (69-year old defendant with health issues was granted a reduction of his life sentence to time served, having served 30 years in prison); United States v. Cantu, Case No. 1:05-CR-458 (S.D. Tex., June 17, 2019); United States v. McGraw, Case No. 2:02-CR-018, 2019 WL 2059488 (S.D.Ind. May 9, 2019) (72-year old and wheelchair-bound defendant with other health issues was granted a reduction in his life sentence after serving sixteen years); United States v. Bazemore, Case No. 3:12-CR-319, Dkt. 203 (N.D.Tx., March 16, 2019); United States v. Evans, Case No. 4:15-CR-015, Dkt. 428 (S.D.Tx., March 8, 2019).

Mr. Miller concedes that prior to COVID-19, he did not present ther extraordinary and compelling circumstances setforth in the cases in the preceding paragraph.  He was serving only a moderately lengthy sentence, was not unusually elderly, and did not demonstrate a medical condition that warranted a reduction.   COVID-19, however, is a game-changer to the application of compassionate release statutes.  The following is a list of defendants who have received a sentence reduction under the compassionate release statute due to COVID-19, last having been updated April 21, 2020:

1)   United States v. Atwi, No. 18-cr-20607, 2020 WL 1910152 (E.D.

(9)

Mich. Apr. 20, 2020);

2)   United States v. Scparta, No. 18-cr-578, 2020 WL 1910481 (S. D.N.Y. Apr. 20, 2020);

3)   United States v. Atkinson, No. 19-cr-55, 2020 WL 1904585 (D. Nev. Apr. 17, 2020);

4)   United States v. Gileno, No. 19-cr-161, 2020 WL 1904666 (D. Conn. Apr. 17, 2020);

5)   United States v. Joling, No. 11-cr-60131, 2020 WL 1903280 (D. Or. Apr. 17, 2020);

6)   United States v. Asaro, No. 17-cr-127, 2020 WL 1899221 (E.D. N.Y. Apr. 17, 2020);

7)   United States v. Hammond, No. 02-cr-294, 2020 WL 1891980 (D. D.C. Apr. 16, 2020);

8)   Samy v. United States, No. 16-cr-20610 WL 1888842 (E.D. Mich. Apr. 16, 2020);

9)   United States v. Cosgrove, No. 15-cr-230, 2020 WL 1875509 (W.D. Wash. Apr. 15, 2020);

10)   United States v. Coker, No. 14-cr-85, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020);

11)   United States v. Gross, No. 15-cr-769, 2020 WL 1862251 (S.D. N.Y. Apr. 14, 2020);

12)   United States v. McPherson, No. 94-cr-5708, 2020 WL 1862596 (W.D. Wash. Apr. 14, 2020);

13)   United States v. Kataev, No. 16-cr-763, 2020 WL 1862685 (S. D.N.Y. Apr. 14, 2020).

Many of the inmates above whose sentence was reduced under 18 U.S.C. § 3582(c)(1)(A) were elderly or had pre-existing health issues.

V.   The Exhaustion Requirement for Compassionate Release Should Be Waived

As detailed supra, the First Step Act and 18 U.S.C. § 3582(c)(1)(A), require that an inmate exhaust all remedies available, which means to make a request of, and denied by, the Warden of the institution. Alternatively, if the Warden does not rule within 30 days, the request is considered to have been denied, and an inmate can file. While Mr. Miller made a request of the Warden on November 10, 2020 he was denied by the Warden in a written response on

December 11, 2020.  While Mr. Miller has not met the exhaustion requirement required by the statute, he requests this Court waive the requirement under these dire and narrow circumstances.

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that must be strictly enforces." United States v. Monzon, 2020 WL 550220 at *2 (S.D. N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)).  The Court may waive that requirement only if one of the recognized exceptions to exhaustion applies. "Even where exhaustion is seemingly mandated by statute..., the requirement is not absolute."  Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146-47 (1992)).[21]

There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision-makers are biased or because the agency has already determined the issue." Id. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." Id. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id.

All three of these exceptions apply here.  "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay,

_____

21. The Supreme Court has stressed that for "a statutory exhaustion provision... Congress sets the rules - and courts have a role in creating exceptions only if Congress wants them to." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016).  Even when faced with statutory exhaustion requirements, however, the Supreme Court has allowed claims to proceed notwithstanding a party's failure to complete the administrative review process established by the agency "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate," so long as the party presented the claim to the agency.  Mathews v. Eldridge, 424 U.S. 319, 330 (1976).

become inadequate.  Finally, and obviously, [they] could be unduly prejudiced by such delay."  Washington, 925 F.3d at 120-21; see also Bowen v. City of New York, 476 U.S. (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); Abbey v. Sullivan, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health,...then waiver may be appropriate."); New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even...death").

Here, even a few weeks of delay carries the risk of catastrophic health consequences for Mr. Miller.  In United States v. Perez, No 1:17-CR-00513, Dkt. 98 (S.D.N.Y., April 1, 2020), the district court waived the exhaustion requirement in a compassionate release motion for these exact reasons.  "Courts should be flexible in determining whether exhaustion should be excused," Pavano v. Shalala, 95 F.3d 147, 151 (2d Cir. 1996), and "[t]he ultimate decision of whether to waive exhaustion...should also be guided by the policies underlying the exhaustion requirement." Bowen, 476 U.S. at 484.

Further, waiving the exhaustion requirement in this case is consistent with the compassionate release statute.  The provision allowing defendants to bring motions under § 3582(c)(1)(A) was added by the First Step Act, Pub.L. No. 115-391, 132 Stat. 5194 (2018), in order to "increas[e] the use and transparency of compassionate release."  132 Stat. 5239.  Requiring exhaustion generally furthers that purpose, because the Bureau of Prisons is normally best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release.  18 U.S.C. § 3582(c)(1)(A)(i).  In Mr. Miller's case, however,

administrative exhaustion would defeat, not further, the policies underlying §
3582(c).  Here, delaying release amounts to denying relief altogether, and runs
the risk of Mr. Miller suffering great physical harm.  Mr. Miller asks that his
sentence be modified so that he can be released now, leave a prison where
people are dying, and commence a period of home confinement to serve as the
remainder of his custodial sentence.  Therefore, he requests this Court waive
the exhaustion requirement.

VI.     Consideration of the § 3553(a) Factors Warrant the Reduction Requested.

Mr. Miller should be granted compassionate release under the 18 U.S.C. §
3553(a) factors.  The compassionate release statute permits this Court to reduce
a defendant's sentence upon consideration of the § 3553(a) factors, and upon a
finding that there are extraordinary and compelling reasons warrant such a
reduction.  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

The COVID-19 pandemic is clearly an extraordinary and compelling reason
to consider a reduction.  For the last month COVID-19 has effected every part of
the globe and affected all facets of normal daily living.  Citizens in the
community have made changes to their daily routine and to how they physically
interact with others.  Those who are incarcerated are not able to make such
drastic changes to their daily lives; the conditions of prison place limitations
on their ability to effectively combat this virus.  They cannot practice social
distancing, but are contained in crowded living pods, and inmates have little to
no control over the way in which their surroundings are cleaned and sterilized.
Further, the sanitary conditions are substantially diminished as compared to the
average community.  This places Mr. Miller at a heightened risk for COVID-19
simply by being incarcerated.

Further, Mr. Miller has a startling three of the core risk factors
identified by the CDC for particular susceptibility to COVID-19: diabetes.  He
also has two of the secondary factors: hypertension and high blood pressure.  If

he contracts COVID-19, the resources for its inability to effectively meet the healthcare needs of inmates.  Now, with the pandemic, the strain on the ability of the Bureau of Prisons to provide proper healthcare to inmates in even greater.

Additionally, for Mr. Miller, compassionate release would protect Mr. Miller's health but not result in a sentence reduction that is a substantial amount of years.  Mr. Miller also enjoys a family support from his fiancee, Ms. Barbara Gardener.  Mr. Miller is fortunate to have access to his fiancees other vehicle so that he can get to and from every place that he is required to be in a timely fashion.  He plan to schedule doctor appointments with the specialist he is required to see due to his many health issues with the ultimate goal of being cleared by the doctors and begin working.  Mr. Miller has a few jobs lined up in the Dutchess County area.  Without question, Mr. Miller is going to abide by the rules and regulations that the Courts and probation sets, as well as not break any more laws set by local, state and federal authorities.  Mr. Miller is also going to attend drug and mental health counseling.  Among other positive works, Mr. Miller will begin a Virtual Group Discussion (Town Hall Discussion) with parents who are raising 'at risk kids' who are either on or heading to that road of distruction that Mr. Miller personally traveled for 30 plus years.  He knows that prevention is better then a cure and he has the need to help prevent as many kids as possible from landing in places like the one he presently reside in.  Again, Mr. Miller plans to live with his fiancee, Ms. Barbara Gardener, at 31 DuBois Ave., Poughkeepsi, NY, 12601.

These facts and circumstances detail that granting the requested reduction will not jeopardize the public safety but that the § 3553(a) factors support a reduction.  Mr. Miller's continued detention in FCI Williamsburg risks exposure to COVID-19.  Given the circumstances, Mr. Miller has a real fear of his health and safety by his continued detention.  Therefore, he is in need of a

compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A).

## IV.   Conclusion

For the foregoing reasons, Mr. Miller requests this Court grant him a compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A).   These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence.   He asks this Court to reduce his sentence to time served and that he immediately be placed on supervised release, with the condition that he be placed on home confinement as the Court deems appropriate.

Respectfully submitted,

Ronald Miller Pro se

1-8-2021

Application for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied.  Mr. Miller has received the two-shot vaccine, which studies show is approximately 95% effective.  Thus, even considering Mr. Miller's medical challenges, he falls far short of establishing extraordinary and compelling circumstances that justify his early release.  Furthermore, even if Mr. Miller met this burden, consideration of the Section 3553(a) factors argues strongly against early release.  Mr. Miller committed serious crimes and has served a small portion of his sentence. Early release would undercut the deterrence the Court felt was important in imposing that sentence, as well as respect for the law.

So Ordered.

2/19/21

*Exhibit A*

**From:**        ^l"MILLER,  ^lRONALD" <86807054@inmatemessage.com>
**To:**
**Date:**       11/10/2020 3:20 PM
**Subject:**    ***Request to Staff*** MILLER, RONALD, Reg# 86807054, WIL-C-A

To: Mr Morris
Inmate Work Assignment: n/a

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
e52860c7-0973-481b-bfcd-35d8d574e1d0
Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


I'm requesting that you consider me for compassionate release due trod the Covid-19 circumstance. I'm suffer from hypertension, graves disease, diabetes, seizures and also suffering due to being struck in my face by a lock plate negligently kicked by a Correctional officer (Officer St. Claire; Oklahoma Transfer Center; august 27,2020). To date I have received minimum treatment for the face injury. Everything I just mentioned could very well put me at higher risk of harm or even death. I once again hope you consider me for compassionate release.

                        THANK YOU,
                        Ronald Miller
                        868070564

# REQUEST FOR REDUCTION IN SENTENCE

NAME: MILLER, Ronald                    REG. NO.: 86807-054
UNIT:  2AL

This is in response to your Inmate Request to Staff, wherein you are requesting to be
considered for early release pursuant to 18 U.S.C. 3582 (c)(1)(A).   You are requesting to
be considered for a Compassionate Release based on Debilitated Medical Condition.
Specifically, you state you suffer from various medical conditions, including hypertension,
Graves' disease, diabetes, seizures and a face injury.   You further state that due to these
medical conditions, you are at increased vulnerability to COVID-19.

A thorough review of your request was completed, utilizing Program Statement 5050.50,
Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18
U.S.C. 3582 (c)(1)(A) and 4205(g), medical staff have determined that you do not meet the
criteria under Debilitated Medical Condition.   The medical evaluation concluded that you do
not meet the criteria required by the Program Statement of being capable of only limited
self-care or being confined to a bed or chair more than 50 percent of waking hours.

The evaluation concluded that all of your conditions are controlled through medication.
Additionally, you are capable of performing activities of daily living (ADL) without assistance
and are capable of carrying out self-care.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any
affected inmates.   We recognize that you, like all of us, have legitimate concerns and fears
about the spread and effects of the virus.   However, your concern about being potentially
exposed to, or possibly contracting, COVID-19 does not currently warrant an early release
from your sentence.

Accordingly, your request is denied.   If you are not satisfied with this response, you may
appeal through the Administrative Remedy Program.

_____              12·11·2020
Bryan K. Dobbs, Warden                    _____
                                          Date

Exhibit C

| | |
|---|---|
| nmate Name: MILLER, RONALD | Reg #: 86807-054 |
| Date of Birth: 01/16/1975 | Sex:  M  Race: BLACK | Facility: WIL |
| Encounter Date: 10/08/2020 20:30 | Provider: Hoey, Stephen D.O./CD | Unit: F01 |

**New Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| | INsulin REG - Human | 10/08/2020 20:30 |

    **Prescriber Order:**   U-100 Subcutaneously -  Two Times a Day PRN x 90 day(s) Pill Line Only -
- "Sliding Scale"; 0-60 notify PA/MD; 61-200  0 Units; 201-250  4 Units; 251-
300  6 Units;  301-350  8 Units; >350  10 Units, and notify PA/MD

    Indication:  Type 2 diabetes mellitus

    Start Now:  Yes

      Night Stock Rx#:

      Source:  Sub Stock Location

      Admin Method:  Pill Line

      Stop Date:  01/06/2021 20:29

      MAR Label:  U-100 Subcutaneously -  Two Times a Day PRN x 90 day(s) Pill Line Only --
"Sliding Scale"; 0-60 notify PA/MD; 61-200  0 Units; 201-250  4 Units; 251-300  6
Units;  301-350  8 Units; >350  10 Units, and notify PA/MD

    One Time Dose Given:  No

**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 887355-OKL | ER/XR 24 Hour Cap  75 MG | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one capsule (75 MG) by mouth each morning x 180 day(s)

    Indication:  Major depressive disorder, recurrent

| 887362-OKL | 15 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one-half (1/2) tablet (7.5 MG) by mouth every night at bedtime x 180
day(s) Pill Line Only

    Indication:  Major depressive disorder, recurrent

| 887356-OKL | levETIRAcetam  750 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one tablet (750 MG)  by mouth two times a day x 365 day(s)

    Indication:  Epilepsy/Seizure Disorder

| 887354-OKL | hydroCHLOROthiazide 25 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one tablet (25 MG) by mouth each morning x 365 day(s)

    Indication:  Essential (primary) hypertension

| 887357-OKL | Metoprolol Tartrate  25 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one tablet (25 MG) by mouth three times daily x 365 day(s)

    Indication:  Essential (primary) hypertension

| 887359-OKL | Methimazole  5 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one tablet (5 MG) by mouth at bedtime x 365 day(s)

    Indication:  Disorder of thyroid, unspecified

| 887360-OKL | metFORMIN HCl 1000 MG Tab | 10/08/2020 20:30 |

    **Prescriber Order:**   Take one tablet (1000 MG)  by mouth two times a day x 365 day(s)

    Indication:  Type 2 diabetes mellitus

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| | Omeprazole 20 MG Cap | 10/08/2020 20:30 |

    **Prescriber Order:**   *Take two capsules (40 MG) by mouth every night at bedtime ***NOTE DOSE
and STRENGTH*** x 30 day(s) -- arrived with 7 day supply*

    Discontinue Type:  *When Pharmacy Processes*

| Inmate Name: | MILLER, RONALD | | | | Reg #: | 86807-054 |
|---|---|---|---|---|---|---|
| Date of Birth: | 01/16/1975 | Sex: | M   Race:  BLACK | | Facility: | WIL |
| Encounter Date: | 10/08/2020 20:30 | Provider: | Hoey, Stephen D.O./CD | | Unit: | F01 |

**Discontinued Medication Orders:**

| Rx# | Medication | | Order Date |
|---|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* | |
| | Discontinue Reason: | *Formulary Restriction* | |
| | Indication: | | |

*LevoTHYROXINE Sodium 25 MCG (Synthroid) Tab*                                                                 *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one tablet (25 MCG) by mouth each day on an empty stomach (30 minutes before breakfast) for hypothyroidism x 30 day(s) -- arrives with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *discontinue* |
| | Indication: | |

*levETIRAcetam  750 MG Tab*                                                                                         *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one tablet (750 MG)  by mouth two times a day x 30 day(s) -- arrives with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *new order written* |
| | Indication: | |

*metFORMIN HCl 1000 MG Tab*                                                                                       *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one tablet (1000 MG) by mouth two times a day x 30 day(s) -- arrived with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *new order written* |
| | Indication: | |

*Methimazole  5 MG Tab*                                                                                               *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one tablet (5 MG) by mouth at bedtime x 30 day(s) -- arrived with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *new order written* |
| | Indication: | |

*Metoprolol Tartrate  25 MG Tab*                                                                                   *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one tablet (25 MG) by mouth three times daily x 30 day(s) -- arrived with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *new order written* |
| | Indication: | |

*15 MG Tab*                                                                                                                 *10/08/2020 20:30*

| | **Prescriber Order:** | *Take one-half (1/2) tablet (7.5 MG) by mouth every night at bedtime x 30 day(s) Pill Line Only -- arrived with 7 day supply* |
|---|---|---|
| | Discontinue Type: | *When Pharmacy Processes* |
| | Discontinue Reason: | *new order written* |
| | Indication: | |

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 10/29/2020 00:00 | Routine |

Ronald Miller
D. # 86807054
Williamsburg FCI
P.O. Box 340
Salters, S.C. 29590

LEGAL -
MAIL - USM WP
SDNY

CERTIFIED MAIL

7017 1000 0000 8241 20__

CLERK:
U.S. District Court
Southern District New York
300 Quarropas street
White Plains, NY
10601

RECEIVED
FEB 05 2021
S.C.



**FCI/SCP WILLIAMSBURG**
**P O BOX 220**
**SALTERS, SC 29590**
Date _____

The enclosed letter was processed through special mail procedures for forwarding to you. The letter was neither opened nor inspected. If the writer raises a problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer correspondence for forwarding to another return the enclosure to the above.

_____
Mail Room Officer